**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

MICHAEL GENE NIKIRK
dba INDEPENDANT TRANSPORT GROUP
dba ITG EQUIPMENT SALES REPAIR
KIMBERLY S. NIKIRK
dba INDEPENDANT TRANSPORT GROUP
dba ITG EQUIPMENT SALES REPAIR

        Debtors

Case No. 3:17-bk-30140-SHB
Chapter 7

KAPITUS SERVICING, INC., formerly
COLONIAL FUNDING NETWORK, INC., as
servicing provider for CORE BUSINESS FINANCE

        Plaintiff

        v.

MICHAEL GENE NIKIRK and
KIMBERLY S. NIKIRK

        Defendants

Adv. Proc. No. 3:19-ap-3033-SHB

## **M E M O R A N D U M**

**APPEARANCES:**    BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
                              Justin Sveadas, Esq.
                              Erno Lindner, Esq.
                              633 Chestnut Street
                              Suite 1900
                              Chattanooga, Tennessee  37450
                              Attorneys for Plaintiff

                              FRESH START LAW FIRM, PC
                              Kimberly Cambron, Esq.
                              103 Suburban Road
                              Suite 201
                              Knoxville, Tennessee  37923
                              Attorneys for Defendants

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

Plaintiffs commenced this adversary proceeding by filing the Complaint to Determine Nondischargeability of Debt Owed to Core Business Finance ("Complaint") on July 1, 2019 [Doc. 1], seeking a nondischargeable judgment against Defendants in the amount of at least $234,613.22 pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and/or (a)(6). Defendants timely filed their Answer to Adversary Complaint ("Answer") on July 24, 2019 [Doc. 9], denying Plaintiff's allegations of fraud and its entitlement to a nondischargeable judgment.

Before the Court is Plaintiff's Motion for Summary Judgment ("Motion for Summary Judgment") filed on January 15, 2020 [Doc. 29], which is supported by a Statement of Undisputed Material Facts as required by E.D. Tenn. LBR 7056-1(a), a brief as required by E.D. Tenn. LBR 7007-1(a), and the Affidavits of David Wolfson, Vice President of Risk Management and Asset Recovery for Plaintiff, and Erno Lindner, Plaintiff's counsel. [Docs. 30, 31, 32, 33.][1] Plaintiff also relies on the Requests for Admissions deemed admitted through the Order Granting Plaintiff's Requests for Admissions Admitted [Docs. 20-1, 21.][2] Defendants filed their response opposing the Motion for Summary Judgment; however, the response was late-filed,[3] did not include a response to Plaintiffs' Statement of Undisputed Material Facts [Doc. 32], and included no evidence to support Defendants' opposition. The Court has considered any documents of record in Defendant's underlying bankruptcy case that have been referenced by either party in

---

[1] Plaintiff filed a Reply to Defendants' responsive brief [Doc. 45]; however, the reply is not authorized by the Local Rules, and Plaintiff did not seek leave of Court so that the reply has not been considered by the Court.

[2] In the Memorandum on Motion to Withdraw or Amend Request for Admissions Deemed Admitted Pursuant to Rule 36(b) and the corresponding Order [Docs. 39, 40], the Court rejected Defendants' request to withdraw the admissions deemed admitted.

[3] In its Order entered February 13, 2020 [Doc. 40], denying Defendants' request to withdraw the admissions deemed admitted, the Court directed Defendants to file a response to the Motion for Summary Judgment by February 24, 2020. Defendants' response was filed one day late, without leave of Court, on February 25, 2020. [Doc. 43.]

either statement of undisputed material facts. *See* Fed. R. Evid. 201.[4]

## I.  UNDISPUTED FACTS[5]

On May 11, 2015, and July 9, 2015, Plaintiff purchased $222,200.00 of the future accounts, monetary payments, and other general receivables payable to Independent Transport Group, LLC, dba Independent Transport Group ("ITG"),[6] pursuant to two Revenue Based Factoring Agreements for the Purchase and Sale of Future Receivables (collectively, "Agreements") executed by Defendants, who were 100% owners and guarantors of ITG and also executed personal guaranties of ITG's performance and obligations under the Agreements. [Docs. 1, 9 at ¶¶ 7, 10-11; Doc. 1-1; Doc. 32 at ¶¶ 1-3.]  In exchange for financing, Plaintiff would collect 15% of the daily batch amount of ITG's receivables by ACH debits from an authorized account. [Docs. 1, 9 at ¶ 29.]  Additionally, through the Agreements, Defendants represented that the bank and financial statements provided to Plaintiff accurately represented their financial condition; there were no material financial or other changes in the condition, ownership, or operations of ITG, of which Defendants had good, complete, and marketable title to all receivables free and clear of liens and liabilities; neither Defendants nor ITG were insolvent and/or anticipated filing for bankruptcy; Defendants would utilize a bank account that was acceptable to Plaintiff, which would be irrevocably authorized to ACH debit remittances daily; Defendants would not enter into any agreement or commitment for additional financing without Plaintiff's consent; and Defendants would use the funding proceeds received from Plaintiff for only non-consumer purposes. [Doc. 1-1 (Merchant Agreement Terms and

---

[4] All references to the record in Defendants' underlying bankruptcy case shall be [Nikirk Doc. __].

[5] Because Defendants did not file a response to the Statement of Undisputed Material Facts [Doc. 32], pursuant to E.D. Tenn. LBR 7056-1(b), "the material facts set forth in the movant's statement [are] deemed admitted."

[6] Defendants' identified "Independ*a*nt Transport Group" as a dba in their bankruptcy petition. [Nikerk Doc. 1 at p. 2.]

Conditions at ¶ II); Doc. 32 at ¶ 8.] The Agreements expressly included the following representations:

> To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of the above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to repay this obligation and that the information provided herein and in all of FUNDER documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and FUNDER and FUNDER shall be entitled to all remedies available under law. Merchant and each of the above-signed Owners authorizes FUNDER, its agents and representatives and any credit reporting agency engaged by FUNDER, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) obtain credit report at any time now or for so long as Merchant and/or Owner(s) continue to have any obligation owed to FUNDER.
>
> ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECT WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL FRAUDULENT INDUCMENT TO OBTAIN FINANCING.

[Doc. 1-1 at pp. 2, 7.] Each of the Agreements also expressly state that, in event of default, Plaintiff is entitled to recover "all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of FUNDER's remedies set forth in Section 4.2 above, including but not limited to court costs and attorneys' fees." [Doc. 1-1 at pp. 3, 8 (Merchant Agreement Terms and Conditions at ¶ III.3.3).]

During negotiations, Defendants provided Plaintiff with an annual income statement and monthly bank account statements representing that ITG had annual gross revenues over $1,000,000.00 and monthly credit card receivables of $110,000.00-$125,000.00, which would sufficiently cover the obligations incurred under the Agreements. [Doc. 30 at ¶¶ 8-9; Doc. 32 at ¶¶ 4-5.] Defendants also participated in pre-funding calls with Plaintiff during which Defendants represented that they did not anticipate closing the business for any reason within the following year; they were unaware of any reason that either they or ITG would need to file for bankruptcy;

and they were current with payments for their taxes, loans, and outstanding balances with merchants. [Doc. 30 at ¶¶ 8-9; Doc. 32 at ¶¶ 4, 6.] During the parties' negotiations, calls, and execution of the Agreements, Defendants acknowledged that any untruthful representations could give rise to a fraud claim. [Doc. 32 at ¶¶ 4, 9.]

Plaintiff advanced funds to Defendants under the terms of the Agreements based on its reliance on Defendants' representations and financial documentation. [Doc. 32 at ¶¶ 11-12.] Within weeks of execution of the Agreements, by July 27, 2015, Defendants had defaulted under the terms of the Agreements by terminating the daily ACH transfers to Plaintiff, not depositing receivables to the designated bank account, and transferring ITG's funds into bank accounts that Plaintiff could not access, and ITG was administratively dissolved by the State of Tennessee one year later, on August 6, 2016. [Docs. 1, 9 at ¶ 17; Doc. 30 at ¶¶ 14-16; Doc. 32 at ¶¶ 19-20.]

Defendants filed a Voluntary Petition commencing a Chapter 11 bankruptcy case[7] on January 18, 2017, at which time they owed Plaintiff an obligation of approximately $234,613.22, consisting of $191,270.00 in principal, $15,000.00 for contractual default fees, ACH fees of $685.00, and $27,658.22 in interest. [Docs. 1, 9 at ¶ 5; Doc. 30 at ¶ 17; Doc. 32 at ¶ 21.] Defendants scheduled a $206,955.00 obligation to Plaintiff in their Schedule E/F filed on February 4, 2017 [Nikirk Doc. 29 at p. 3.], and Plaintiff filed a proof of claim on February 21, 2017, which was amended on January 18, 2019, in the amount of $234,613.22 [Nikirk Claim 7-2.]

---

[7] On February 21, 2018, the Court entered an Order Confirming Chapter 11 Plan of Reorganization [Nikirk Doc. 166]. Because Defendants failed to perform under the confirmed plan and comply with requirements of the Bankruptcy Code, the United States Trustee filed a Motion to Dismiss or Convert to Chapter 7 on September 5, 2018 [Nikirk Doc. 170], which was resolved by an Agreed Order entered October 4, 2018 [Nikirk Doc. 174]. The Agreed Order directed Defendants to seek conversion to Chapter 13. On November 9, 2018, after notice and a hearing, the Court entered the Order Converting Chapter 11 Case to Chapter 13 Upon Debtors' Request Post Confirmation [Nikirk Doc. 184]. Defendants did not confirm a Chapter 13 plan, and they converted the case to Chapter 7 on March 26, 2019 [Nikirk Docs. 218, 221].

Plaintiff timely filed this adversary proceeding seeking a nondischargeable judgment against Defendants for their default under the Agreements and attempted to engage in discovery by serving Defendants with Plaintiff's First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions on September 4, 2019. [Doc. 20-1.] On October 31, 2019, Plaintiff filed its Motion to Deem Plaintiff's Request for Admissions Admitted and Memorandum in Support, which was granted on November 26, 2019, by the Order Granting Plaintiff's Requests for Admissions Admitted ("Order Deeming Admissions Admitted"). [Doc. 21.] The Order Deeming Admissions Admitted expressly provided, "For the purposes of the pending adversary proceeding, the matters set forth in Plaintiff's First Requests for Admissions are deemed by the Court to be ADMITTED, pursuant to Federal Rule of Civil Procedure 36 and Federal Rule of Bankruptcy Procedure 7036." [Doc. 21].[8] The Requests for Admission that were deemed admitted are as follows:

> No. 1: Admit that on the date of the Pre-Funding Calls [*sic*], you misrepresented not anticipating ITG ceasing to do business within the next twelve months.
>
> No. 2: Admit that on the date of the Pre-Funding Call, ITG and/or the Defendants were not current on all of their tax obligations.
>
> No. 3: Admit that on the date of the Pre-Funding Calls [*sic*], ITG and/or the Defendants were in arrears on any debt.
>
> No. 4: Admit that on the date of the Pre-Funding Calls [*sic*], ITG and/or the Defendants were planning a bankruptcy filing.
>
> No. 5: Admit that on the Pre-Funding Calls, you made inaccurate statements.
>
> No. 6: Admit that you failed to comply with ITG's and/or Defendants' representations and warranties to Plaintiff in the Agreements.
>
> No. 7: Admit that you made inaccurate statements in order to obtain financing from Plaintiff.

---

[8] The Motion to Deem Admissions Admitted included required notice of the 21-day response time under E.D. Tenn. LBR 7007-1(c). After Defendants failed to respond to the Motion to Deem Admissions Admitted, the Court entered the Order Deeming Admissions Admitted. [Doc. 21.]

>    No. 8:  Admit that you made misrepresented [*sic*] your or ITG's financial condition to obtain financing from Plaintiff.
>
>    No. 9:  Admit that you used funding provided by Plaintiff for your personal use.
>
>    No. 10:  Admit that you terminated the daily ACH to Plaintiff provided for in the Agreements.
>
>    No. 11:  Admit that you entered [*sic*] the Agreements with the intent to obtain funds from Plaintiff that you never intended to repay.
>
>    No. 12:  Admit that, at the time the Agreements were being negotiated, you misrepresented that ITG and or [*sic*] you were current on all taxes.
>
>    No. 13:  Admit that at the time the Agreements were being negotiated, you were aware that ITG was insolvent.
>
>    No. 14:  Admit that at the time the Agreements were being negotiated, you were aware that ITG's receivables were already encumbered.
>
>    No. 15:  Admit that ITG is an insider of yours, and that you misrepresented its financial condition in order to obtain funds.
>
>    No. 16:  Admit that you transferred the funds and/or receivables of ITG into accounts not accessible by Plaintiff.
>
>    No. 17:  Admit that you did not use the funds under the Agreements for business purposes.
>
>    No. 18:  Admit that you obtained funds based on false and fraudulent statements and acts.

[Doc. 20-1 at pp. 16-17.]

Plaintiff now seeks summary judgment, arguing that it is entitled to judgment against Defendants for unpaid obligations under the Agreements, including attorneys' fees, and a determination that the judgment is nondischargeable.[9]

---

[9] As of January 15, 2020, Plaintiff had incurred attorneys' fees and expenses of $30,237.67 to enforce its rights under the Agreements, including but not limited to the filing of this adversary proceeding. [Doc. 31 at ¶¶ 2-3.]

## II. ANALYSIS

### A. Rule 56 – Standard for Summary Judgment

Federal Rule of Civil Procedure 56, which is applicable to adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" utilizing the procedures defined in subsections (c)(1) through (c)(4). When deciding a summary judgment motion, the Court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff, as movant, bears the burden of proving that the record presented to the Court establishes the lack of a genuine dispute of material fact such that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). "A genuine dispute of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a [fact-finder] to return a verdict for that party.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (quoting *Anderson*, 477 U.S. at 249). "[The] party seeking summary judgment always bears the initial responsibility of informing the [trial] court of the basis for its motion[,]" *Celotex Corp.*, 477 U.S. at 323, and "[a]s the party moving for summary judgment, [Plaintiff] bear[s] the burden of showing the absence of a genuine issue of material fact as to at least one essential element of [Defendants'] claim[s]." *Laster*, 746 F.3d at 726.

Once the initial burden of proof is met, the burden shifts to the nonmoving party to prove that there are genuine disputes of material fact for trial, but reliance solely on allegations or

denials contained in the pleadings is insufficient because a "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).  The Court views the facts and all resulting inferences in a light most favorable to Defendants to decide whether "the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243.  Summary judgment is appropriate only if the fact-finder could not find for the non-moving party based on the "the record taken as a whole." *Matsushita*, 475 U.S. at 587.

### B. Entitlement to a Judgment Against Defendants

As an initial matter, before it can determine dischargeability of a debt, the Court must determine whether there is a debt.  The answer to this question can easily be answered in the affirmative.  There is no dispute that Defendants entered into the Agreements with Plaintiff and remain obligated to Plaintiff.  In fact, Defendants acknowledged the debt in their bankruptcy schedules and admitted in their Answer that they owe Plaintiff under the Agreements.  They also did not challenge the affidavit testimony provided by Mr. Wolfson that as of January 18, 2017, Defendants' obligation to Plaintiff was $234,613.22 (principal of $191,270.00, contractual default fees of $15,000.00, ACH fees of $685.00, and interest of $27,658.22), the same amount reflected in the amended proof of claim filed by Plaintiff in Defendants' bankruptcy case. [Doc. 30 at ¶ 17.]  It is likewise undisputed that the Agreements provide for payment of any attorneys'

fees or expenses incurred by Plaintiff to enforce the Agreemnets, which as of January 15, 2020, totaled $30,237.67. [Doc. 31 at ¶¶ 2-3.] Accordingly, the Court finds that Plaintiff is entitled to a judgment against Defendants in at least the amount of $264,850.89.[10]

### C. Nondischargeability Under § 523(a)(2)(A)

Having found that Plaintiff is entitled to a judgment against Defendants, the Court must next determine whether the judgment is nondischargeable. An individual is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). "'[A]ctual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l. Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016). To meet its burden of proof required under § 523(a)(2)(A), Plaintiff must prove that Defendants obtained money or property from or belonging to Plaintiff through false pretenses and/or material misrepresentations that Defendants knew were false or that they made with gross recklessness or through actual fraud; that Defendants intended to deceive Plaintiff when they made any such statements; that Plaintiff justifiably relied on such statements; and that its reliance was the proximate cause of the losses Plaintiff incurred. *See, e.g., Lansden v. Jones (In re Jones)*, 585 B.R. 465, 502 (Bankr. E.D. Tenn. 2018).

Although "a material misrepresentation can be defined as 'substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision' . . . , '[a] misrepresentation is not material if the creditor knows it is false or "possesses information sufficient to call the representation into question."'" *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 761 (Bankr.

---

[10] The Court will permit Plaintiff's counsel to submit another fee affidavit following entry of the order granting summary judgment in Plaintiff's favor for the additional fees incurred since January 15, 2020.

E.D. Tenn. 2003) (quoting *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1470 (9th Cir. 1996); *In re Sheridan*, 57 F.3d 627, 635 (7th Cir. 1995) (quoting *Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 676 (7th Cir. 1995))). Additionally, intent to deceive includes consideration of "whether the totality of the circumstances 'presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.'" *Graham v. Graham (In re Graham)*, 600 B.R. 90, 95 (Bankr. D. Kan. 2019) (quotation omitted). Also "'a direct link [must exist] between the alleged fraud and the creation of the debt.'" *Copeland*, 291 B.R. at 767 (quoting *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 n.7 (1st Cir. 2001)).

The undisputed record reflects that the elements required to find a determination of nondischargeability under § 523(a)(2)(A) are satisfied. First, Defendants received funds from Plaintiff pursuant to the Agreements; the terms of the Agreements expressly included representations concerning the accuracy of the information and financial documentation provided to Plaintiff by Defendants; the Agreements also specified that any misrepresentation concerning the information provided would constitute fraud or fraudulent inducement; and Defendants intended to deceive Plaintiff when they made the false representations for the purpose of obtaining funds from Plaintiff. [Doc. 1-1.] Not only did Defendants fail to dispute any of the facts as recited by Plaintiff in its Statement of Undisputed Material Facts, Defendants are bound by the following admissions concerning their false representations to Plaintiff in order to obtain funding:

> 1. They misrepresented that they did not anticipate ITG would cease doing business within twelve months.
>
> 2. They and/or ITG were not current on all of their tax obligations.
>
> 3. They and/or ITG were in arrears on debts when at the time Defendants engaged in the pre-funding calls with Plaintiff.
>
> 4. They and/or ITG were planning to file for bankruptcy at the time Defendants engaged in the pre-funding calls with Plaintiff.

    5. They made inaccurate statements during the pre-funding calls with Plaintiff.

    6. They did not comply with the representations and warranties made to Plaintiff within the terms of the Agreements.

    7. They made inaccurate statements in order to obtain financing from Plaintiff.

    8. They misrepresented their and/or ITG's financial condition to obtain financing from Plaintiff.

    . . . .

    11. They entered into the Agreements with the intent to obtain funds from Plaintiff that they never intended to repay.

    12. They misrepresented, while negotiating the Agreements, that they and/or ITG were current on all taxes.

    13. They knew, while negotiating the Agreements, that ITG was insolvent.

    14. They knew, while negotiating the Agreements, that ITG's receivables were already encumbered.

    15. They misrepresented the financial condition of ITG, an insider, in order to obtain funds.

    . . . .

    18. They obtained funds from Plaintiff based on false and fraudulent statements and acts.

[Doc. 20-1 at pp. 16-17.]

Likewise, Defendants did not dispute or rebut the following evidence that Plaintiff relied on Defendants' representations when it provided Defendants with the funds:

    10. Under Plaintiff's guidelines at the time, Plaintiff would not have approved and funded the Agreements if the Plaintiff had been aware that any of the Representations and Warranties were untrue.

    11. Plaintiff justifiably and reasonably relied upon the Representations and Warranties in connection with its underwriting process. As a lender, this is the type of information Plaintiff typically relies upon to review and approve similar applications.

12. Plaintiff would not have approved the Agreements if it had known that the Debtors had no intention or ability to repay them. As a direct result of Plaintiff's reliance upon the Representations and Warranties, Plaintiff sustained significant losses . . . .

[Doc. 30 at ¶¶ 10-12.] Finally, there is no dispute that Plaintiff has incurred a tangible injury in the form of the outstanding obligation owed to it by Defendants as well as the attorneys' fees and expenses that it has incurred as a result of Defendants' default under the Agreements for which the Court has determined Plaintiff is entitled to judgment. [*See* Doc. 1-1 at pp. 3, 8 (Merchant Agreement Terms and Conditions at ¶ III.3.3.]

## II.  CONCLUSION

Based on the record, Plaintiff has met its burden of proving that there is no genuine dispute of material fact and that it is entitled to a judgment as a matter of law against Defendants in the amount of $264,850.89, plus attorneys' fees incurred since January 15, 2020, and, pursuant to 11 U.S.C. § 523(a)(2)(A), the judgment is nondischargeable.[11] An Order consistent with this Memorandum will be entered.

FILED:  April 3, 2020

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE

---

[11] Because the undisputed record supports a finding of nondischargeability under subsection (a)(2)(A), it is unnecessary for the Court to address Plaintiff's request for a determination of nondischargeability under subsections (a)(2)(B) and (a)(4).